## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| GENERAL MILLS, INC. and GENERAL MILLS SPECIALTY PRODUCTS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> RAWBITE ApS and JB L.E.G.E.N.D. LLC, <br><br> Defendants. | Civil Action No. <br><br> **COMPLAINT** <br><br> (JURY TRIAL DEMANDED) |

Plaintiffs General Mills, Inc. and General Mills Specialty Products, LLC, by and through their attorneys, allege the following in support of their Complaint against Defendants, RAWBITE ApS and JB L.E.G.E.N.D. LLC (collectively, "Defendants"):

## NATURE OF THE ACTION

1. This is an action for trade-dress infringement under the Lanham Act, 15 U.S.C. § 1125(a); copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*; and unfair competition and deceptive trade practices under Minnesota state law.

## THE PARTIES

2. Plaintiffs General Mills, Inc. and General Mills Specialty Products, LLC (collectively, "General Mills") are corporations organized and existing under the laws of the State of Delaware with their principal place of business at Number One General Mills Boulevard, Minneapolis, Minnesota 55426.

3.     Upon information and belief, Defendant RAWBITE ApS ("RawBite") is a corporation organized and existing under the laws of the Country of Denmark with its principal place of business at Lyngbyvej 419, 2820 Gentofte, Denmark.

4.     Upon information and belief, Defendant JB L.E.G.E.N.D. LLC ("JBL") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 10 Technology Drive, Suite 40, Hudson, Massachusetts 01749.

5.     Upon information and belief, Defendant JBL is a mere alter ego and instrumentality of Defendant RawBite in that RawBite utterly controls and dominates the affairs of JBL, and JBL's separate corporate existence is disregarded by RawBite.

## JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction over General Mills' federal claims pursuant to 28 U.S.C. §§ 1331, 1338.   The Court also has subject-matter jurisdiction over General Mills' Lanham Act claim pursuant to 15 U.S.C. § 1121.

7.     This Court has supplemental jurisdiction over General Mills' claims arising under Minnesota state law pursuant to 28 U.S.C. § 1367(a) because those claims are so related to General Mills' federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

8.     This Court has personal jurisdiction over Defendants because, upon information and belief, Defendant JBL has directed its business activities in the State of Minnesota, and this suit arises directly out of those activities.   Likewise, Defendant RawBite has purposefully directed its business activities toward the State of Minnesota

through Defendant JBL, its alter ego and instrumentality, and this suit arises directly out of those activities.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to General Mills' claims occurred in this District.

## FACTS
## General Mills' Protected Trade Dress and Copyright

10.     Since 2003, General Mills, either directly or through its predecessor in interest (sometimes collectively referred to hereinafter as "General Mills"), has continuously sold a line of fruit and nut bars under the brand name "LÄRABAR®." LÄRABAR bars are unique in that they are made from a gluten-free blend of unsweetened fruits, nuts, and spices and contain no more than nine ingredients.

11.     LÄRABAR bars were first developed in March 2000 by an individual named Lara Merriken, founder of Humm Foods, Inc. ("Humm Foods"), who crafted the recipes in her home kitchen after conducting focus groups among her family and friends. Ms. Merriken first sold  LÄRABAR bars in April 2003.

12.     General Mills acquired Humm Foods and the LÄRABAR brand and product line in 2008.

13.     General Mills has sold LÄRABAR bars in a variety of flavors, including, among others, Apple Pie, Banana Bread, Blueberry Muffin, Carrot Cake, Cashew Cookie, Cherry Pie, Chocolate Chip Brownie, Chocolate Chip Cookie Dough, Key Lime Pie, Lemon Bar, and Pecan Pie.  The photographs below show the packaging for several of these flavors:

  

  

14.     Since the launch of the LÄRABAR snack bars in 2003, the LÄRABAR packaging has consistently featured a unique and distinctive trade dress design that includes the following elements, all of which are depicted in the photographs above:

   a.   A prominent rectangular banner, oriented horizontally and centered laterally on the face of a packaging comprising:

        i.    a solid-colored background (shown in red above);

        ii.   the brand name (shown as "LÄRABAR" above) in all-capital, block letters in a color contrasting the background color (shown in beige above) and having a thin, black outline; and

        iii.  a frame around the perimeter in the same color as the brand name;

   b.   A product slogan in all-capital letters beneath the brand name (shown as "THE ORIGINAL FRUIT & NUT FOOD BAR" above);

   c.   The flavor name listed in all capital letters beneath the brand name; and

   d.   A background covering the remainder of the packaging comprising a generally solid color.

15.     The combination and arrangement of the features described above constitute General Mills' distinctive trade dress in its LÄRABAR packaging ("The Lärabar Trade Dress").

16.    In addition to being used on the individual LÄRABAR wrappers, The Lärabar Trade Dress is also utilized on the caddy boxes from which LÄRABAR bars are sold on store shelves or in freestanding store displays, examples of which are shown below:







17.     The Lärabar Trade Dress is also utilized on the LÄRABAR "five-bar boxes," examples of which are shown below:

  

18.     General Mills has used The Lärabar Trade Dress extensively in interstate commerce.

19.     General Mills sells its LÄRABAR products featuring The Lärabar Trade Dress in numerous grocery and convenience store chains across the United States,

including CVS, Giant, Jewel, Publix, Safeway, Sam's Club, Target, Trader Joe's, Walmart, Walgreens, and Whole Foods Market.

20.     General Mills also sells its LÄRABAR products featuring The Lärabar Trade Dress online, including via Amazon.com.

21.     General Mills has invested significant time, funds, and effort toward developing, marketing, and commercializing its LÄRABAR products featuring The Lärabar Trade Dress and toward establishing The Lärabar Trade Dress as a source identifier.  As a result, General Mills has built and owns valuable goodwill in The Lärabar Trade Dress.

22.     Since 2015, General Mills has spent more than an estimated $30 million to advertise its LÄRABAR products, and has generated over an estimated 700 million media impressions in the process.

23.     General Mills advertises its LÄRABAR products featuring The Lärabar Trade Dress in various magazines.  For example, The Lärabar Trade Dress has been featured in *People*, *US Weekly*, and *Women's Health*, among others.  LÄRABAR products featuring The Lärabar Trade Dress are also promoted in television commercials during such popular shows as *The Bachelorette*, *Scandal*, and *The Voice*.  LÄRABAR products featuring The Lärabar Trade Dress have also been promoted on the well-known television show *The Biggest Loser*.

24.     General Mills also advertises its LÄRABAR products featuring The Lärabar Trade Dress on various social-media platforms, including Facebook, Instagram, and Twitter.  As of July 2017, over 250,000 people followed the LÄRABAR Facebook

account; over 41,000 people followed the LÄRABAR Twitter account; and over 74,000 people followed the LÄRABAR Instagram account.

25.     General Mills has generated extensive revenue from its LÄRABAR products featuring The Lärabar Trade Dress.

26.     As a result of General Mills' promotional, advertising, and marketing efforts, The Lärabar Trade Dress has become widely known throughout the United States.

27.     LÄRABAR products have received extensive, unsolicited praise from a variety of magazines and online sources.  For example, the November 2010 *Men's Health* magazine listed LÄRABAR among "The 125 Best Foods for Men," and Bicycling.com named LÄRABAR one of the "Best Energy Bars for Every Ride" in 2011.  Notably, these articles prominently display The Lärabar Trade Dress in discussing the products.

28.     The Lärabar Trade Dress is inherently distinctive.

29.     The Lärabar Trade Dress also has acquired distinctiveness, or "secondary meaning," in that consumers have come to view The Lärabar Trade Dress as a source identifier based on the unique appearance of the product packaging.

30.     The Lärabar Trade Dress is non-functional.

31.     The Lärabar Trade Dress is a combination and arrangement of features that provide a unique ornamental and aesthetic appearance.

32.     The Lärabar Trade Dress is not essential to the use or purpose of a fruit and nut bar.

33.     There are numerous alternative ways to promote and sell fruit and nut bars without using The Lärabar Trade Dress or packaging confusingly similar thereto.

34.     General Mills also owns the following U.S. federal trademark registrations and applications relating to its LÄRABAR products:

| Mark | Reg./App. No. | Goods | Reg./App. Date |
|---|---|---|---|
| **LÄRABAR** | 2,939,196 | Energy bar composed of fruits and nuts | April 12, 2005<br><br>(First use in commerce: October 1, 2002) |
| LÄRABAR | 3,954,227 | Energy bar composed of fruits and nuts | May 3, 2011<br><br>(First use in commerce: October 1, 2002) |
| THE ORIGINAL FRUIT & NUT FOOD BAR | 4,292,019 | Processed fruit- and nut-based food bars | February 19, 2013<br><br>(First use in commerce: March 24, 2006) |

35.     General Mills has applied to the U.S. Copyright Office for a Certificate of Copyright Registration for the LÄRABAR packaging ("The Lärabar Copyright"). *See* Application No. 1-5692289421.

36.     General Mills' intellectual property, including The Lärabar Trade Dress and the goodwill associated therewith and The Lärabar Copyright, are valuable assets of General Mills.

**Defendants' Infringement of The Lärabar Trade Dress and Copyright**

37.     Upon information and belief, Defendant RawBite produces a line of fruit and nut bars sold under the brand name "RAW•BITE."

38.     Upon information and belief, Defendant JBL is the exclusive distributor of the RAW•BITE bars in the United States.

39.     Upon information and belief, prior to June 2016, Defendant RawBite sold its RAW•BITE products only in Europe.

40.     Upon information and belief, Defendant RawBite began selling its RAW•BITE products in Europe only after General Mills stopped selling its LÄRABAR products there, around 2008–2009.

41.     Upon information and belief, RawBite began operating a U.S. website, located at rawbite.us, in January 2016.

42.     Upon information and belief, rawbite.us now re-directs to jblegend.com.

43.     Upon information and belief, RawBite began selling RAW•BITE products in the United States through its distributor, JBL, in June 2016.

44.     Upon information and belief, RAW•BITE bars are now sold in various grocery and convenience stores throughout the United States, including in Alabama, California, Colorado, Connecticut, Florida, Georgia, Illinois, Massachusetts, Minnesota, Mississippi, New York, North Carolina, Oregon, Pennsylvania, South Carolina, Tennessee, and Washington.

45.     Upon information and belief, RAW•BITE bars are also sold online, including at http://jblegend.com/store/.

46.     Upon information and belief, Defendants had access to and notice of The Lärabar Copyright before Defendants began selling the RAW•BITE products in the

United States, as LÄRABAR products have been publicly available for sale in the United States since 2003.

47.   Upon information and belief, RAW•BITE bars are sold in at least seven flavors in the United States, including Apple Cinnamon, Cashew, Coconut, Protein, Raw Cacao, Spicy Lime, and Vanilla Berries.   Photographs of RAW•BITE bars in each of these flavors are shown below:



48.   The individual RAW•BITE bars are packaged in wrappers that have the same look and feel as The Lärabar Trade Dress, as shown below:



| The Lärabar Trade Dress | Defendants' Packaging |
|---|---|

49.     Defendants also sell their RAW•BITE bars in caddies that look strikingly similar to, and are likely to be mistaken for, the caddies in which LÄRABAR products are sold, as shown in the photographs below:



| Examples of LÄRABAR Caddies | Examples of Defendants' Caddies |
|---|---|



50.    Like the LÄRABAR caddies, the RAW•BITE caddies regularly appear grouped on store shelves or in store displays, as shown below:

| Examples of LÄRABAR Caddies in Stores | Examples of RAW•BITE Caddies in Stores |
|---|---|






51.     As shown in the examples below, Defendants have also copied the look and feel of General Mills' social-media posts promoting the LÄRABAR products:



| Examples of General Mills' LÄRABAR Posts | Examples of Defendants' RAW•BITE Posts |
|---|---|
| Lärabar Facebook Post, 7/17/2012 | RawBite USA Facebook Post, 1/4/2017 |

| Examples of General Mills' LÄRABAR Posts | Examples of Defendants' RAW•BITE Posts |
|---|---|
|  | |
| Lärabar Facebook Post, 8/27/2012 | RawBite USA Facebook Post, 4/15/2016 |

52.     Defendants' RAW•BITE packaging—including the individual RAW•BITE wrappers and the RAW•BITE caddies—looks extremely similar to, and is likely to be mistaken for, The Lärabar Trade Dress.

53.     There has been actual confusion between Defendants' RAW•BITE packaging and The Lärabar Trade Dress.

54.     Defendants are not authorized by General Mills to use The Lärabar Trade Dress, or any packaging that is confusingly similar thereto, in connection with their fruit and nut bars or any related products.

55.     Defendants sell the RAW•BITE products in the same marketing channels as General Mills' LÄRABAR products, including in grocery and convenience stores and over the Internet.

56.     Defendants advertise and promote the RAW•BITE products on various social-media platforms, including Facebook, Instagram, and Twitter.

57.     On information and belief, Defendants designed the RAW•BITE packaging with knowledge of The Lärabar Trade Dress and with the intent to copy The Lärabar Trade Dress to obtain consumer recognition and interest based upon the success and reputation of the LÄRABAR products.

58.     On information and belief, Defendants have sold and continue to sell RAW•BITE products in packaging confusingly similar to The Lärabar Trade Dress with full knowledge of The Lärabar Trade Dress and with the intent to copy such trade dress and pass off their products as those of General Mills, and to create consumer confusion.

59.     The advertising and sale of Defendants' RAW•BITE products are likely to cause confusion, mistake, and/or deception to customers and potential customers that Defendants' RAW•BITE products originate from the maker of the LÄRABAR products, or that Defendants' RAW•BITE products are affiliated with, sold with the permission of, or approved, sponsored, or licensed by the maker of the LÄRABAR products.

60.     Defendants' social-media posts, depicted above, further support that Defendants have deliberately copied The Lärabar Trade Dress to cause consumer confusion.

61.     In selling their products, Defendants trade on the goodwill General Mills has established in The Lärabar Trade Dress and place the valuable reputation of the LÄRABAR products in the hands of third parties over whom General Mills has no control.

62.     Defendants' RAW•BITE packaging is substantially—indeed, strikingly—similar to The Lärabar Copyright.

63.     In designing the RAW•BITE packaging, Defendants have copied the LÄRABAR packaging without authorization in violation of The Lärabar Copyright.

64.     Defendants' misconduct is causing immediate and irreparable injury to General Mills and to its goodwill and reputation, and will continue both to damage General Mills and to deceive the public unless enjoined by this Court.  General Mills has no adequate remedy at law.

## Survey Evidence Showing Secondary Meaning

65.     General Mills recently commissioned a consumer perception survey to confirm the existence of brand awareness, and thus secondary meaning, for The Lärabar Trade Dress.

66.     The survey was conducted by Isabella Cunningham, an experienced survey expert, in May and July of 2017.  Dr. Cunningham first ran a pilot survey followed by a larger-scale survey and aggregated the results.  The universe population for both surveys was defined as U.S. adults who had purchased snack bars, such as nutrition, granola or energy bars, in the previous three months and who were planning to buy them in the following three months.  The test group consisted of 628 subjects, and the control group consisted of 322 subjects.  All of the subjects were representative of U.S. consumers.

67.     The subjects in each group were shown various pictures of packaging and were asked a series of questions designed to test for brand recognition of The Lärabar Trade Dress.  In particular, subjects in the test group were shown the image below, which replicated The Lärabar Trade Dress while eliminating other potentially source-identifying elements, such as the LÄRABAR brand name, from the packaging:



68.     The survey results showed that a net of **57.2%** of all test subjects associated the appearance of The Lärabar Trade Dress with a single source, thereby confirming that The Lärabar Trade Dress has acquired secondary meaning.  In addition, **38.3**% of those subjects were able to identify LÄRABAR as the source brand.

### Survey Evidence Showing a Likelihood of Confusion

69.     General Mills also commissioned a survey to confirm the existence of a likelihood of confusion between The Lärabar Trade Dress and Defendants' RAW•BITE packaging.

70.     The survey was conducted by David Stewart, Ph.D., an experienced survey expert, in May and July of 2017.  The survey design followed the well-accepted *Squirt* protocol.   Survey respondents were first shown the "senior" mark (the LÄRABAR packaging).  After removing the senior mark from view, respondents were then shown another mark: either the "test" mark (the RAW•BITE packaging) or a "control" mark (a third-party, non-infringing product called the "init" bar).  After viewing either the test or control mark, survey respondents were asked a series of questions about their perceptions of any association between the senior mark and the test or control mark.  The total sample size for the survey included 1,000 respondents who were equally divided between the test and control conditions.

71.     Generally, in such surveys, a likelihood of consumer confusion is demonstrated if there is a significant difference in the percentage of consumers who perceive an association between the senior mark and the test mark relative to any associations perceived to exist between the senior mark and the control mark.

72.     General Mills' survey showed that, on aggregate, 70% of respondents in the test group who were shown the RAW•BITE stimuli exhibited confusion, whereas only 39% of respondents who were shown the control stimuli evidenced confusion. Therefore, the survey demonstrated a net confusion rate of **31%** (70%-39%). This is strong evidence of a likelihood of consumer confusion.

## COUNT I
## Trade-Dress Infringement Under 15 U.S.C. § 1125(a)

73.     General Mills repeats and re-alleges the allegations set forth in paragraphs 1–72 above.

74.     Defendants' use of packaging confusingly similar to The Lärabar Trade Dress in connection with their RAW•BITE bars, which do not originate from General Mills, is likely to cause confusion, mistake or deception among the purchasing public as to the origin of Defendants' products, and is likely to deceive the public into believing that Defendants' products originate from, are associated with, or are sponsored or authorized by General Mills when they are not.

75.     Defendants' actions demonstrate an intentional and willful intent to trade on the goodwill associated with The Lärabar Trade Dress.

76.     By reason of the foregoing, Defendants have willfully infringed The Lärabar Trade Dress in violation of 15 U.S.C. § 1125(a).

77.     Defendants' acts have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to General Mills, for which General Mills has no adequate remedy at law.

## COUNT II
## Copyright Infringement Under 17 U.S.C. §§ 106, 501

78.     General Mills repeats and re-alleges the allegations set forth in paragraphs 1–77 above.

79.     The Lärabar Copyright constitutes an original work of authorship and is copyrightable subject matter under 17 U.S.C. § 101 *et seq.* and the laws of the United States.

80.     General Mills owns The Lärabar Copyright and has complied in all respects with the Copyright Act and all other laws governing copyrights, and has secured the exclusive rights and privileges in and to The Lärabar Copyright.

81.     Defendants have infringed The Lärabar Copyright in violation of 17 U.S.C. §§ 106 and 501.

82.     Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to General Mills' rights.

83.     As a direct and proximate result of Defendants' infringement, General Mills is entitled to damages in an amount to be proven at trial.

84.     General Mills is also entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to those profits.

85.     Defendants' acts have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to General Mills, for which General Mills has no adequate remedy at law.

## COUNT III
## Unfair Competition Under Minnesota State Common Law

86.     General Mills repeats and re-alleges the allegations set forth in paragraphs 1–85 above.

87.     Defendants' activities, as described above, constitute unfair competition under the common law of the State of Minnesota.

88.     Defendants knowingly and willfully engaged in the foregoing acts of unfair competition.

89.     Defendants' acts have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to General Mills, for which General Mills has no adequate remedy at law.

## COUNT IV
## Violation of Minnesota Uniform Deceptive Trade Practices Act,
## Minn. Stat. §325D.43 *et seq.*

90.     General Mills repeats and re-alleges the allegations set forth in paragraphs 1–89 above.

91.     Defendants' activities, as described above, constitute deceptive trade practices in violation of Minn. Stat. § 325D.44.

92.     Defendants knowingly and willfully engaged in the foregoing deceptive acts or practices.

93.     Defendants' acts have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to General Mills, for which General Mills has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, General Mills prays for the following relief:

A.     A finding that Defendants have infringed The Lärabar Trade Dress in violation of 15 U.S.C. § 1125(a);

B.     A finding that Defendants have infringed The Lärabar Copyright in violation of 17 U.S.C. §§ 106 and 501;

C.     A finding that Defendants have engaged in unfair competition under Minnesota state law;

D.     A finding that Defendants have violated Minnesota Statute § 325D.44;

E.     An injunction preliminarily and permanently enjoining Defendants and their directors, officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, from:

      i.     directly or indirectly infringing or misappropriating The Lärabar Trade Dress and/or The Lärabar Copyright;

ii.    continuing to advertise, promote, sell or offer to sell any products that infringe or misappropriate The Lärabar Trade Dress and/or The Lärabar Copyright;

iii.    continuing to advertise, promote, sell or offer to sell any products that are likely to cause consumer confusion or misunderstanding as to the source, sponsorship, approval or certification of Defendants' goods and/or as to the affiliation, connection or association with or certification by General Mills;

iv.    continuing to advertise, promote, sell or offer to sell any products that are substantially similar to The Lärabar Copyright;

v.    engaging in further deceptive and unfair trade practices with respect to General Mills or otherwise competing unfairly with General Mills; and

vi.    assisting, inducing or aiding or abetting any other person or entity in engaging in any of the activities prohibited in subparagraphs i through v above.

F.    An order requiring the impounding and destruction of all inventory and advertisements in the possession of Defendants that infringe The Lärabar Trade Dress and/or The Lärabar Copyright along with all means of making the same;

G.    An order requiring Defendants to file with the Court and serve on General Mills within thirty (30) days after service of the Court's order as herein prayed a report (or other form of proof) in writing under oath setting forth in detail the manner and form in which Defendants have complied with the Court's injunction;

H.     A judgment entered for General Mills and against Defendants, jointly and severally, for all damages sustained by General Mills for Defendants' acts of trade-dress infringement, copyright infringement, and unfair competition, including but not limited to Defendants' profits along with costs and attorneys' fees, and trebling such damages pursuant to 15 U.S.C. § 1117(a) and other applicable provisions of law;

I.     An award of pre-judgment and post-judgment interest;

J.     An accounting from Defendants for all gains, profits, and advantages derived from their acts of trade-dress infringement, copyright infringement, unfair competition, and/or other violations of the law as alleged herein;

K.     An order requiring that all gains, profits, and advantages derived by Defendants from their acts of trade-dress infringement, copyright infringement, unfair competition, and/or other violations of the law as alleged herein, be deemed to be in constructive trust for the benefit of General Mills, and that such award of profits be increased as the Court deems appropriate pursuant to 15 U.S.C. § 1117(a) and other applicable provisions of law;

L.     A finding that this case is "exceptional" under 15 U.S.C. § 1117(a), and, on that basis, an award of General Mills' attorneys' fees and costs;

M.     An award of General Mills' attorneys' fees and costs under 17 U.S.C. § 505;

N.     A finding that Defendants willfully engaged in deceptive trade practices under Minn. Stat. § 325D.44, and, on that basis, an award of General Mills' attorneys' fees and costs pursuant to Minn. Stat. § 325D.45; and

O.     Such other and further relief as the Court may deem necessary, just, and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, General Mills hereby demands a trial by jury on all matters and issues so triable.

Dated: August 8, 2017                  Respectfully submitted,


                                        By:    /s/ Benjamin W. Hulse
                                               Benjamin W. Hulse
                                               BLACKWELL BURKE P.A.
                                               431 South Seventh Street, Suite 2500
                                               Minneapolis, Minnesota 55415
                                               T: (612) 343-3200
                                               F: (612) 343-3205
                                               bhulse@blackwellburke.com

                                               Thomas L. Holt
                                               (Pro Hac Vice Application Forthcoming)
                                               Caroline A. Teichner
                                               (Pro Hac Vice Application Forthcoming)
                                               PERKINS COIE LLP
                                               131 S. Dearborn Street, 17th Floor
                                               Chicago, Illinois 60603
                                               T: (312) 324-8400
                                               F: (312) 324-9400
                                               THolt@perkinscoie.com
                                               CTeichner@perkinscoie.com

                                               David T. Biderman
                                               (Pro Hac Vice Application Forthcoming)
                                               PERKINS COIE LLP
                                               1888 Century Park East, Suite 1700
                                               Los Angeles, California 90067
                                               T: (310) 788-9900
                                               F: (310) 788-3399
                                               DBiderman@perkinscoie.com

                                               *Attorneys for Plaintiffs*
                                               *General Mills, Inc. and General*
                                               *Mills Specialty Products, LLC*